FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 18, 2025

SEAN F. McAVOY, CLERK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

REGINA C.,[1]

               Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

               Defendant.

No.  1:25-cv-03082-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to depression, anxiety, congenital deformity of her elbows and forearms, attention-deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD), Plaintiff Regina C. claims that she is unable to work fulltime and applied for supplemental security income benefits. She appeals the denial of benefits by the

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

Administrative Law Judge (ALJ) and argues that he erred in evaluating the medical opinions by failing to develop the record, erred in rejecting Plaintiff's subjective claims, and erred at step five. As is explained below, by failing to develop the record, the ALJ's decision is not supported by substantial evidence. This matter is remanded for further proceedings.

## I.     Background

In November 2021, Plaintiff filed an application for benefits under Title 16, claiming disability beginning September 7, 2019, based on the impairments noted above.[2] Plaintiff's claim was denied at the initial and reconsideration levels.[3] After the agency denied Plaintiff benefits, ALJ Malcolm Ross held a telephone hearing in July 2023, at which Plaintiff appeared with her representative.[4] Plaintiff and a vocational expert testified.[5]

---

[2] AR 366-372, 399.

[3] AR 139, 146.

[4] AR 64-92.

[5] *Id.*

Plaintiff testified that she completed 11th grade, and had tried to get a GED but did not complete it.[6] Since 2019 she had not worked other than helping a neighbor with yardwork, that consisted of by carrying bags of leaves and scraps to the garbage and  Plaintiff had not been paid to do so.[7] She said that she gets panic attacks, due to fears that she will not able to do necessary things because of pain in her arms and hands.[8]  The condition with her fused elbows existed since birth but in the last year and half she has also started to have pain in her hands with cramping.[9] Plaintiff said that the hand cramps in both hands come and go. [10] X-rays were taken at an orthopedist's office but they were never received by her doctor. [11]

---

[6] AR 72.

[7] AR 73-74.

[8] AR 74.

[9] AR 74-75.

[10] AR 75.

[11] *Id*.

1
2
3
4
5
6
7
8
9

Plaintiff testified that she used marijuana at the time of the hearing but had stopped using heroin and other substances in 2019.[12] She said that since 2019 she had a couple of short relapses and the last one was in 2021 and that she had not used methamphetamine since 2020.[13] Plaintiff said she smokes marijuana because it helps her eat and helps with her pain.[14] Plaintiff said she had been prescribed suboxone and later methadone but was no longer taking either.[15] She had last taken methadone about a year prior.[16]

10
11
12
13

Plaintiff said her mental state was stressed and that she spent her time trying to find housing.[17] She said she just stays with various family and friends but has an address she can use for mail.[18] She said

14
15
16
17
18
19
20
21
22
23

---

[12] AR 77.

[13] *Id.*

[14] AR 78.

[15] AR 78-79.

[16] AR 79.

[17] *Id.*

[18] AR 79-80.

that the pain in her right hand was worse than the left but it was present in both.[19] She said she could reach overhead but could not straighten her arms to reach more than about 60% outstretched in front of her.[20] She said she could not carry more than 5 pounds and that if she had to carry a box she would need to balance it on top of her hands.[21] She said she can use her hands for up to 30 minutes but then needs to take a 15 minute break.[22]

She said that she has anxiety in public and fears that someone will try to force her arm to supinate and hurt her when doing so.[23] She said that when she is depressed she will not go out and will just sleep and isolate herself.[24] She said she has been seeing a counselor but her

---

[19] AR 81.

[20] *Id.*

[21] AR 82.

[22] AR 83.

[23] *Id.*

[24] AR 84.

appointment was rescheduled recently due to the counselor's schedule.[25]

Plaintiff said she wanted to see a specialist for her arm deformity but she was referred to one in Seattle and had no means to travel there.[26]  She said she has never really worked because of the issues with her hands and her anxiety over them.[27]

After the hearing, the ALJ issued a decision denying benefits.[28] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[29] As to medical opinions, the ALJ found:

- The statements of state agency evaluators R. Hander, MD; W. Hurley, MD; R. Eisenhauer, PhD; and B. Eather, PhD,

_____

[25] *Id.*

[26] AR 84-85.

[27] AR 85-86.

[28] AR 17-36.  Per 20 C.F.R. § 416.920(a)-(g), a five-step evaluation determines whether a claimant is disabled.

[29] AR 26-28.

that the record lacked sufficient evidence to form an opinion
was not an opinion and did not have to be evaluated for
persuasiveness.

- The opinions of consultative examiners Marquetta
  Washington, ARNP; and Leslie Smith, PMHNP, to be
  persuasive.

- The opinions of treating source, Brandon Health, PA-C, to
  be unpersuasive.[30]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful
  activity since the application date of November 5, 2021.

- Step two: Plaintiff had the following medically determinable
  severe impairments: congenital dysfunction of the bilateral
  forearms, social anxiety, ADHD, and PTSD.

- Step three: Plaintiff did not have an impairment or
  combination of impairments that met or medically equaled

---

[30] AR 28-30.

the severity of one of the listed impairments, including specifically Listing 1.00, 1.18, 12.06, 12.10, and 12.15.

- RFC:  Plaintiff had the RFC to perform a full range of work at the light exertional level but with the following limitations:

  [Plaintiff can] never climb ladders, ropes or scaffolds; occasional crawling; frequent bilateral forward and lateral reaching; occasional bilateral overhead reaching; frequent bilateral handling; no exposure to hazards, such as unprotected heights and dangerous machinery; able to understand, remember and carry out simple work; with standard work breaks provided; occasional interaction with the public and coworkers; and occasional workplace changes.

- Step four: Plaintiff has no past relevant work.

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a router (DOT 222.587-038), routing clerk (DOT 222.687-022), marker (DOT 209.587-034).[31]

---

[31] AR 23-31.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[32]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[33] and such error impacted the nondisability determination.[34] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[32] ECF No. 1; AR 1-8, 363.

[33] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[34] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a), (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35]

### III.   Analysis

Plaintiff seeks relief from the denial of disability on three grounds. She argues the ALJ erred when assessing the medical opinions by failing to develop the medical record, erred in rejecting Plaintiff's subjective complaints, and erred in failing to conduct an adequate analysis at Step Five.[36]  The Commissioner counter-argues that the ALJ fully and fairly developed the record and asserts that the

---

[35] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[36] ECF No. 8.

duty to develop the record further is triggered only when there is ambiguous evidence or the record is inadequate to allow for proper evaluation.[37] The Commissioner also argues that the ALJ properly considered that Plaintiff's subjective complaints were not supported by the record and inconsistent with her lack of treatment.[38]  Additionally, the Commissioner asserts that the ALJ did not err at step five because Plaintiff has failed to meet her burden to show additional limitations should be included.[39]  As is explained below, the Court concludes that the ALJ's error in failing to develop the medical record was consequential; the record requires development on remand.

## A.    Medical Opinions/Duty to Develop: Plaintiff establishes consequential error.

Plaintiff argues that the ALJ erred in his consideration of the medical opinions. Having reviewed the record, the Court concludes that the record lacks sufficient evidence upon which the Court can evaluate

---

[37] ECF No. 9, p. 4.

[38] ECF No. 8.

[39] *Id.*

the ALJ's consideration of the medical opinions.  The Court concludes that the ALJ erred in failing to consider the general opinions of the state agency evaluators that the record contained insufficient evidence and therefore required development, and the specific recommendation of PA-C Heath that an x-ray or other imaging of Plaintiff's elbows should be taken and that she should consult with a specialist.

1.   Standard

When evaluating the persuasiveness of each medical opinion, the regulations require the ALJ to consider and explain the supportability and consistency of each medical opinion.[40] The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the

---

[40] 20 C.F.R. § 416.920c(b)(2).

claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[41]

The ALJ may, but is not required to, explain how the other listed

factors were considered.[42]

"The ALJ always has a special duty to fully and fairly develop the

record" to make a fair determination as to disability, even where, as

here, "the claimant is represented by counsel."[43] This "affirmative

responsibility to develop the record" is necessary to ensure that the

ALJ's decision is based on substantial evidence.[44]

2.    The ALJ's Findings

When considering the medical opinions, the ALJ stated the

following with regard to the opinions of the state agency evaluators:

> State agency medical consultants, R. Hander, MD and W. Hurley, MD, and psychological consultants, R. Eisenhauer, PhD and B. Eather, PhD, reviewed the claimant's record. Ex. B4A; B6A. The consultants found that there was insufficient evidence at the time of the initial and

---

[41] *Id.* § 416.920c(c)(1)–(2).

[42] *Id.* § 416.920c(b)(2), (3).

[43] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[44] *Id.* at 1184.

reconsideration determinations to provide an opinion regarding her residual functional capacity. However, a finding of insufficient evidence is not an opinion, and thus, does not require any evaluation as to persuasiveness.[45]

The ALJ then addressed the opinions of ARNP Washington, and articulated the following:

> Based on the normal physical examination findings with the only deficit of forearm supination, ARNP Washington opined that the claimant retains the ability to lift and carry 50 pounds occasionally and 25 pounds frequently. She opined that the claimant is able to stand, walk and sit each for 6 hours cumulatively in an 8-hour day. ARNP Washington found no postural, fine motor, reaching, or environmental limitations. Ex. B6F/5-6. ARNP Washington's opinion is supported by the physical examination findings of the in-person evaluation. Her opinion is also consistent with the claimant's treatment records, which show few physical complaints. See e.g., Ex. B1F/22-23, 29-30, 33, 36-37, 40, 45, 48-49, 56-57, 60, 65, 69. Although I have further restricted the claimant to light work with additional postural, manipulative, reaching and environmental limitations in abundance of caution to accommodate her impairments and symptoms, I find ARNP Washington's opinion persuasive.[46]

The ALJ then addressed the opinions of PA-C Heath, and articulated:

---

[45] AR 28.

[46] AR 29.

Physician assistant, PA-C Health completed a DSHS Physical Functional Evaluation in March 2020, in which he provided the opinion that the claimant is limited to sedentary work, as she is unable to lift or carry objects due to the bone fusion in her forearms, and inability to supine. Ex. B5F/1-3. He stated that the claimant has a "marked" limitation in her abilities to lift, carry, handle, push and pull. Ex. B5F/2. However, he also reported that the claimant did not experience tenderness or pain with movement. Ex. B5F/2. PA-C Health's opinion is not supported by the contemporaneous physical evaluation, or his treatment records. In particular, PA-C Heath stated that the claimant presented for "an incapacity evaluation" because she was "appealing disability and this is part of the process." The claimant stated that she had "no other concerns." Ex. B5F/7. The findings from the physical exam are within normal limits, with the exception that she is unable to pronate her arms. Ex. B5F/8-10. However, PA-C Heath does not provide a rationale as to why this one deficit would restrict the claimant to sedentary level work with marked limitations in lifting, carrying, handling, pushing and pulling. PA-C Heath's opinion is also inconsistent with the nominal treatment records, which do not address any difficulty with the claimant's ability to use her arms. See e.g., Ex. B1F/17-24, 29-31, 36-38. His opinion is further inconsistent with the physical evaluation and opinion of ARNP Washington. Ex. B6F. Thus, PA-C Heath's opinion is unpersuasive.[47]

3.    Relevant Medical Records

---

[47] AR 29-30.

1
2
3

Because the Court is considering the ALJ's evaluation of physical impairments, only those medical records which are relevant will be included.

4
5
6

     a.     _Medical Opinions of State Agency Evaluators Robert Hander, MD, and Wayne Hurley, MD_

7

     i.     *Dr. Hander*

8
9
10
11
12
13
14
15

On January 13, 2022, at the initial level, state agency consultant Robert Hander, MD, an ophthalmologist, reviewed Plaintiff's file.[48] Dr. Hander opined that Plaintiff had a severe impairment of osteoarthritis and allied disorders and a second severe musculoskeletal impairment of an unspecified arthropathy, as a result of elbow pain and fused elbows.[49]  He stated however, that there was insufficient evidence to assess functionality.[50]

16

     ii.     *Dr. Hurley*

17
18
19

---

20

[48] AR 121.

21

[49] AR 121-122.

22

[50] Id.

23

On April 28, 2022, at the reconsideration level, state agency consultant Wayne Hurley, MD, an emergency room physician, reviewed Plaintiff's file.[51] Dr. Hurley also noted that Plaintiff had a severe impairment of osteoarthritis and allied disorders and a second severe musculoskeletal impairment of an unspecified arthropathy, as a result of elbow pain and fused elbows.[52] He also found that the file contained insufficient evidence to assess functionality.[53]

### iii.   PA-C Heath

On March 6, 2020, Plaintiff presented to PA-C Brandon Heath of Yakima Neighborhood Health for an evaluation.[54] PA Health indicated that on examination Plaintiff was able to pronate her elbows 80 degrees bilaterally but could supinate 0 (zero) degrees bilaterally at her elbow.[55]  PA-C Heath noted that Plaintiff was born with a congenital

---

[51] AR 128.

[52] AR 127-128.

[53] *Id.*

[54] AR 579-588.

[55] AR 583.

condition with fused bones in her elbows and had never been able to supinate but had never seen a specialist.[56] He noted that he wanted to obtain x-rays and sent her for a consult with an orthopedic surgeon.[57] He noted that Plaintiff was "born with a fused radius and ulna which prevents her from lifting objects."[58]

On the same day, PA-C Heath completed a Physical Function Evaluation.[59] He wrote that Plaintiff is unable to lift or carry objects due to fused bones in her wrist since childhood and that she had not seen an orthopedist for the condition.[60] PA-C Heath stated that she had no pain or tenderness with movement but was unable to supinate her forearms.[61] He opined that Plaintiff would have a marked impairment

---

[56] AR 584.

[57] *Id.*

[58] *Id.*

[59] AR 579-581.

[60] AR 579.

[61] AR 580.

in lifting, carrying, handling, pushing, and pulling.[62]  PA-C Heath noted that Plaintiff would be limited to sedentary work and that additional information was needed including an x-ray of each arm and a consultation with an orthopedist.[63] PA-C Heath further opined that recommended treatment would be dependent on the results of an orthopedic consult.[64]

### iv.    ARNP Washington

On November 7, 2023, Plaintiff was examined by ARNP Marquetta Washington at the request of the Commissioner.[65] ARNP Washington indicated that Plaintiff presented with complaints that she had been born with fused bones in her elbows and had been experiencing pain in her elbows for the last 5 years as well as having her hands and fingers lock up due to cramps.[66] Plaintiff reported that

---

[62] *Id.*

[63] AR 581.

[64] *Id.*

[65] AR 589-600.

[66] AR 589.

when carrying groceries she had to slide the bag onto her forearm to carry it and that she is limited to carrying 3 pounds.[67] Plaintiff reported that in the past she worked for 2 months in a work release job as a fruit sorter for Del Monte but stopped after 2 months when the season ended because the job was too strenuous on her arm.[68] ARNP Washington noted that Plaintiff reported she was able to bath and care for herself.[69]

On examination, ARNP Washington noted that Plaintiff had 0 degrees supination of her forearms, although pronation was within normal limits.[70] She noted that grip strength was 5/5, and that muscle strength, bulk, and tone were normal.[71] ARNP Washington diagnosed Plaintiff with nicotine dependence, low vision in the left eye, and

---

[67] *Id.*

[68] AR 590.

[69] *Id.*

[70] AR 592.

[71] *Id.*

DISPOSITIVE ORDER - 20

severely decreased bilateral forearm supination secondary to bilateral congenital radioulnar synostosis.[72]

ARNP Washington opined that Plaintiff would be able to lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; and would be able to sit, stand, and walk for up to 6 hours each in an 8-hour day.[73]

ARNP Washington opined that Plaintiff would have no limitation in climbing, stooping, bending, balancing, crawling, kneeling, crouching, handling, fingering, gripping, feeling, reaching forward, and reaching overhead.[74] She also opined that Plaintiff had no limitation to environmental exposure.[75]

4.    <u>Analysis</u>

It is clear from the medical record that Plaintiff suffers from a congenital deformity of her elbows in which the bones are fused.  No

---

[72] AR 593.

[73] *Id.*

[74] AR 593-594.

[75] AR 594.

medical source who has examined the record or the Plaintiff herself disputes that a severe deformity exists.  Moreover, both sources who examined Plaintiff have opined that she has zero range of motion to supinate her hands.  Both PA-C Heath and ARNP Washington categorized Plaintiff's condition as "severe."[76]

Beyond the existence of Plaintiff's "severe" congenital defect, the record becomes somewhat murky.  It was the opinion of both Drs. Hander and Hurley that the medical record required development.[77]  PA-C Heath not only recommended development of the record but made the specific recommendation that x-rays be taken and that Plaintiff be examined by an orthopedic surgeon.[78]

ARNP Washington confirmed that Plaintiff had fused bones in her elbows and had no ability to supinate her hands bilaterally, but her examination was limited to observed clinical findings.  She did not order imaging or review of any prior record to understand the nature of

---

[76] AR 583, 594.

[77] AR 121-122, 127-128.

[78] AR 581.

the fused bones, which would not be apparent to even an orthopedic specialist without proper imaging studies. More importantly, ARNP Washington's opined limitations were not consistent with her own finding that Plaintiff had no ability to supinate her hands bilaterally. As a matter of practicality, for instance, crawling is performed using the knees and palms of the hands and Plaintiff is unable to use her palms or even her forearms, as she is unable to supinate her forearms. This would require Plaintiff to crawl using her knees and elbows, which is at best awkward. The ALJ specifically adopted that finding, and included in the RFC that Plaintiff could crawl occasionally (defined as "up to 1/3 of the day").[79]

Although the ALJ did not adopt ARNP Washington's opinion that Plaintiff had no limitation in climbing,[80] the Court notes that it would be extremely difficult if not impossible for an individual not able to place their palm on the rungs of a ladder to climb said ladder and that ARNP Washington's opinions that there were "no limitations" in any

---

[79] AR 25.

[80] AR 25, 593.

postural activity, fine mother skill, reaching or environmental exposure might be in question.

Here, there is a clear and undisputed diagnosis of a bone deformity in two of Plaintiff's major joints.  There was a recommendation that x-rays be obtained to determine the nature and severity of the deformity but the recommendation was not discussed by the ALJ in his decision or in his evaluation of the medical expert's opinion.

This is a case where medical imaging and the further testimony of a medical expert was needed to opine as to the limitations Plaintiff's congenital condition would cause on her ability to engage in full-time employment, and the evidence was insufficient to allow the ALJ to properly formulate an RFC without development of the record.[81]  On this record, without further development, the Court "cannot conclude that the ALJ's decision was based on substantial evidence . . . "[82]

_____

[81] Hearing, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32 & I-2-5-34.

[82] *Id.*

5.    <u>Summary</u>

The Court concludes that the case should be remanded and the ALJ should be directed to develop the record as necessary, which minimally is to include imaging of each arm and a consultation with an orthopedist, and to make a proper determination.

**B.    Subjective Complaints: This issue is moot.**

Plaintiff asserts that the ALJ erred in rejecting her subjective complaints.  Because the Court has remanded the case for development of the medical record, the ALJ will be required to re-consider the medical opinions, and the credibility of Plaintiff's subjective complaints.

**C.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[83] When

---

[83] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[84]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. Therefore, the ALJ should properly consider the effects of all Plaintiff's medically determinable and severe impairments, reevaluate the opinion evidence, and make findings at each of the five steps of the sequential evaluation process.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social

---

[84] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 18th day of December 2025.

_____
EDWARD F. SHEA
Senior United States District Judge